UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION - LONDON
(electronically filed)

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| VS. | CRIMINAL ACTION NO. 6:21-cr-00032-CHB |
| PATRICK BAKER | DEFENDANT |

## POST-HEARING BRIEF IN SUPPORT
## OF PRETRIAL RELEASE

Comes the defendant, Patrick Baker, through counsel, and, in response to this Court's Order (R. 30), offers this post-hearing brief pertaining to the proper standard for re-opening a detention hearing, whether the United States met that standard, and if so, what, if any, impact the alleged "new evidence" has any on Mr. Baker's pre-trial release.

### THE STANDARD

The standard for re-opening a detention hearing has been clearly laid out by the 6th Circuit. "To reopen a proceeding, a defendant must first establish that the information was not previously known to him. This requires a showing of truly changed circumstances or a significant event. *See, e.g.*, *United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989); *United States v. Peralta*, 849 F.2d 625, 626−627 (D.C. Cir. 1988). Thus, information is not new if it could have been presented at the previous hearing." *United States v. Bothra*, 2019 WL 8883664, at *1 (6th Cir. Nov. 5, 2019).

The first case cited by the 6th Circuit, *Dillon*, was a situation very similar to the case at bar, but the movant was the defendant instead of the United States. The defendant in *Dillon* requested a re-opening of his detention hearing so that he could introduce testimony through

affidavits of his good character. The court "rejected appellant's contention that the letters and affidavits were 'information ... not known to the movant at the time of the hearing' because the letters and affidavits themselves were not in existence at the time of the hearing. Rather, the court pointed out, appellant had had sufficient time to obtain the affidavits and letters, or to arrange for the personal appearance of any witnesses." *United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991).

The second case cited by the 6th Circuit, *Hare*, involved a defendant wishing to reopen his detention hearing so that he could put on family and friends as witnesses to testify regarding his behavior during previous prosecutions. The 5th Circuit upheld the district court's refusal to reopen the hearing. "We agree with the district court that the testimony of Hare's family and friends is not new evidence." *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

In *Peralta*, the D.C. Circuit Court found that the district court had properly reopened a detention hearing based on adverse suppression ruling that was issued *after* the initial detention hearing.

An Ohio district court within the 6th Circuit issued an opinion in 2009 often cited by district courts in this and many other Circuits for the proposition that the requirements for re-opening a detention are interpreted strictly.

> New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event. *See United States v. Rodriquez-Adorno,* 606 F.Supp.2d 232, 239 (D.P.R.2009). Courts have interpreted strictly the statutory provision authorizing the reopening of a detention hearing, holding that hearings should not be reopened if the evidence proffered was available at the time of the hearing. *See United States v. Dillon,* 938 F.2d 1412, 1415 (1st Cir.1991) (affirming district court's decision not to reopen detention hearing based on defendant's submission of affidavits from witnesses that could

2

> have been introduced at the original hearing); *United States v. Hare,* 873 F.2d 796, 799 (5th Cir.1989) (affirming district court's decision not to reopen detention hearing based on proffered testimony of defendant's family members and a friend, because the proffered information was not new); *United States v. Peralta,* 849 F.2d 625, 626-627 (D.C.Cir.1988) (affirmed a district court decision to reopen a detention hearing and detain the defendant on the basis of information not available at the initial hearing, to wit, the denial of a suppression motion which increased the likelihood of conviction).
>
> Mr. Jerdine has not met the statutory threshold for reopening the detention hearing. His representations regarding his character, the facts involved in his arrest, *his past conduct on bond*, where not vague and conclusory, are legally inadequate as *nothing the defendant has offered qualifies as new information not available at the hearing and material to the issue of pretrial release*.

*United States v. Jerdine*, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009), *aff'd,* 511 F. App'x 391 (6th Cir. 2013) (emphases added).

A California district court spoke at length about the standard for reopening and the importance of the standard:

> The government maintains that it may move to reopen a detention hearing whenever it has acquired evidence that it did not possess at the initial detention hearing—regardless of the reason that it did not possess the evidence in time to initially present it. The court disagrees. Basic notions of fairness work to preclude the reopening of a judicial detention/release decision unless the party can demonstrate, at the least, good cause for the failure to initially present the evidence.
> [...]
> The government relied heavily on a treatise concerning the Bail Reform Act written by a respected magistrate judge (John Weinberg) in which he states that: "It is only necessary to show that the information was not 'known' to the movant. It is not relevant that the movant could have, or even should have, known the information at the time of the hearing." Weinberg, *Federal Bail and Detention Handbook,* § 7.09, (1988 & Supp.1991). However, no authority of any kind is referenced, and this court disagrees with the conclusion of the author. The court does so for several reasons.
> There are very few proceedings in federal practice which encourage a party to be less than diligent in bringing forth all material evidence the first time a hearing is held. Generally,

3

> reconsideration of a decided matter based on the presentation of
> additional evidence requires good cause for the failure to present
> that evidence initially. A rule that would not discourage a party for
> failing to acquire readily available evidence for presentation the
> first time is a rule that encourages piecemeal presentations. Judicial
> efficiency is not served by such a practice.
>
>   Moreover, detention hearings are an important part of criminal
> proceedings. It is significant to a defendant when the court orders
> that he or she spend all pretrial time incarcerated—time that ranges
> from four months to several years depending on the complexity
> and events of the case. Motions on the part of the government to
> detain a person pending trial should be viewed as a serious matter.
> Therefore, when the government makes repeated motions for
> detention because it has initially failed to present evidence that was
> readily obtainable, the process appears "stacked" or "rigged." The
> government should not be allowed to schedule seriatim hearings
> for detention until it "gets it right."

*United States v. Flores*, 856 F. Supp. 1400, 1406 (E.D. Cal. 1994) (internal citations omitted).

The standard is clear in the 6th Circuit – the requirement for reopening a detention hearing is strictly interpreted. Reopening is only available when there is truly new evidence that was not available at the time of the initial hearing. Testimony from family and/or friends regarding the defendant's character or behavior during prior prosecutions is not new. A party cannot request a do over simply because they failed to adequately prepare the first time around.

## THE UNITED STATES DID NOT MEET THE STANDARD

Testimony at the hearing regarding the "new evidence" showed that the "new" witness was available to be interviewed prior to the detention hearing, and was available to testify at the initial hearing, had she been asked to. She never refused to answer any questions, she never avoided contact with law enforcement or prosecutors. Agent Mefford testified that he had her phone number and was able to call her to set up an interview.

An Indictment and arrest warrant were issued against Mr. Baker on May 27, 2021. The initial detention hearing took place on June 4th. That allowed, at the least, a period of eight days

for the United States to prepare for the detention hearing. It was not until after Mr. Baker had been ordered released pending trial that the United States decided to interview Ms. Turner. When the agents interviewed Ms. Turner after the detention hearing, they told her specifically they wanted to talk about Mr. Baker's drug use while on HIP pending the state murder trial. They told her that if he had used controlled substances while previously on bond, he might not get released. They told her that's what they wanted her to testify about. Clearly, the at least 8-days of preparation for the detention hearing had been scant; the United States was over-confident and did not do their work until after their loss at the initial hearing. No new information pertaining to the case was acquired from Ms. Turner – they simply were asking her historical questions regarding his behavior during a previous prosecution. The question as to whether family and friends providing information pertaining to character and behavior during prior prosecutions is "new evidence" has been asked and answered in the Sixth Circuit – the answer is NO.

      The proffered "new evidence" was available prior to the initial detention hearing. Ms. Turner was not an obscure witness – she lived with the defendant the entire time of his pre-trial release during the state prosecution. She had already been interviewed twice. Agent Mefford had her phone number. This was easy information to get. The United States, confident that the person they had indicted for murder would be detained, failed to adequately prepare for their case. They cannot seek a second bite based solely on information that existed and was available prior to the hearing.

### EVEN IF CONSIDERED, THE PROFFERED NEW EVIDENCE DOES NOT CHANGE THE DETENTION DETERMINATION

      The Magistrate Judge issued a lengthy order finding that Mr. Baker could be successfully managed in the community with conditions that would reasonably assure against danger. The

proffered new evidence does not change that analysis. The new evidence alleges that while on pre-trial release, Mr. Baker engaged in daily oxycodone abuse between December 2014 and December 2017. (Mr. Baker is not conceding the truth of those allegations.) Mr. Baker has agreed that if he is granted pre-trial release, he will be subjected to strict conditions of federal supervised release, including random drug tests at his expense, random "no cause" searches of his person and residence, strict home confinement and GPS monitoring. These conditions are till sufficient to reasonably guarantee against any resumption of personal drug use. There has been no allegation of drug use since Mr. Baker was released from prison.

In addition, the only specific reference to drug quantities were that Ms. Turner and Mr. Baker shared two oxycodone pills. Ms. Turner testified that they progressed to a daily addiction. There were never any positive drug tests. There were never any violations reported to the state prosecutor. There were never any reports of any correlated bad conduct coincident to the alleged drug abuse. Ms. Turner did not allege that Mr. Baker was trafficking in controlled substances while on pre-trial release. Ms. Turner's addiction continued for two years *after* Mr. Baker went to prison. Ms. Turner was reported to CPS for drug use *after* Mr. Baker went to prison. Ms. Turner sought addiction treatment for several weeks in September of 2019 and has been sober since October of 2019. Mr. Baker's conduct alleged by Ms. Turner is not sufficient to change the determination that conditions of release exist that can reasonably assure against danger to the community. Any relapse into drug use, of which there are no current reports or allegations, would easily be deterred and/or detected by federal supervision with frequent random drug tests and searches. No bad behavior, other than the daily oxycodone use, has been alleged regarding Mr. Baker's pre-trial release during the state prosecution.

## CONCLUSION

As ordered by the Court, Mr. Baker will not repeat his earlier arguments made in all the previous filings related to detention, but incorporates them herein by reference. Also, as requested, Mr. Baker is attaching the two negative drug tests he has been able to get copies of. It is believed that there was at least one other occasion on which Mr. Baker was randomly tested during a court appearance with a negative result, but counsel has been unable to obtain a record of that event.

Mr. Baker respectfully requests that, using the Sixth Circuit standard, the Court decline to reopen the detention hearing on the basis of proffered testimony from family/friends regarding Mr. Baker's conduct while on bond for a previous prosecution. That is not new evidence that was unavailable at the time. However, even if the Court does grant the government's motion to reopen, the proffered testimony does not alter the decision made by the Magistrate – Mr. Baker can be successfully managed in the community and released on conditions that reasonably assure the safety of the community.

**Respectfully submitted**,
/s/   *Rob Eggert*
**ROB EGGERT**
600 West Main Street
Suite 200
Louisville, Kentucky 40202
(502) 540-5700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 24, 2021, the foregoing brief was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all of the attorneys of record.

/s/   *Rob Eggert*
**Rob Eggert**

7

8