UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 6:21-CR-32-CHB

UNITED STATES OF AMERICA                                                       PLAINTIFF

V.            **SENTENCING MEMORANDUM, ADDRESSING UNRESOLVED GUIDELINE OBJECTIONS**

PATRICK BAKER                                                                DEFENDANT

\* \* \* \* \*

This matter is before the Court preceding Defendant Patrick Baker's sentencing hearing. Pursuant to the Court's sentencing order, [R. 122] the United States submits the following memorandum regarding the material objections to the Defendant's presentence report (PSR). The Defendant submitted a total of three (3) objections which materially affect the Defendant's guideline calculation: to include (1) the aggravating role enhancement, (2) abuse of a position of public or private trust enhancement, and (3) obstruction of justice. [PSR at 36-37]. The Defendant also falsely alleges that government witnesses were promised undisclosed deals and that the Defendant was prosecuted in violation of the Double Jeopardy Clause. *Id.* Both of which were addressed in prior filings. Finally, the Defendant requests approximately 904 days of credit for his period of state incarceration.

The government respectfully disagrees with the Defendant concerning his guideline objections as discussed fully below. However, the government concedes the Court should appropriately account for and credit the Defendant for his period of state

1

incarceration. The government also concurs that the Bureau of Prisons (BOP) will not credit the Defendant independently.

## I. The Defendant was an Organizer, Leader, Manager, or Supervisor Pursuant to USSG § 3B1.1(a).

USSG § 3B1.1(a), states "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." A participant is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 3B1.1, Application Note 1.  To qualify for the enhancement, the defendant must have been the organizer, leader, manager, or supervisor of one or more persons. USSG § 3B1.1, Application Note 2. The factors the Court should consider include, "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." USSG § 3B1.1, Application Note 4.

The Defendant need only exercise control over one individual within the criminal offense. In *United States v. Roe*, 790 Fed.Appx. 25, 26 (6th Cir. 2019), the Sixth Circuit held: "[w]e have repeatedly held that in general, a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted." (internal quotation marks omitted); quoting *United States v.*

*Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000); *see also United States v. Baker*, 559 F.3d 443, 449 (6th Cir. 2009).

The government relies upon the factual record established at the Defendant's jury trial. Specifically, the testimony of Christopher Wagner that the Defendant recruited him, armed him, and directed him during the criminal offense. Furthermore, the Defendant took a leadership role in planning and organizing the criminal offense. The Defendant created the law enforcement ruse and purchased the handcuffs for the disguises. *See* Christopher Wagner's testimony, Dollar General representative testimony, KSP Det. Bryan Johnson testimony, Govt Ex. 5 (Dollar General surveillance video), Govt Ex. 6 (Dollar General Receipt), Govt Ex. 41 (handcuffs), and Govt Ex. 2 (images victim's residence). The Defendant secretly photographed the victim approximately 72 hours before the murder. *See* Govt Ex. 38 (the Defendant's iPad), and Govt Ex. 20 (iPad and iPhone reports). The Defendant passed around an aerial Google satellite image of the victim's residence, including the road leading in/out of the residence. *Id.* The Defendant procured the firearms; one from a pawn shop and another from his ex-wife's residence. *See* Govt Ex. 4 (Kel Tec purchase information), Govt Ex. 11 (firearm report), Govt Ex. 16 (the Defendant with Kel Tec), Govt Ex. 24 (Kel Tec), and Govt Ex. 35 (Smith & Wesson firearm), *also see* the pawn shop documentation and testimony of Lori Hammack.

The legal issue raises from the requirement that the offense involve "five or more participants" or be "otherwise extensive." The subject offense only involves five or more participants if the Defendant is included: Christopher Wagner, Elijah Messer, Angela

Mills (Michelle Brown), Stephanie Smith, and the Defendant. In *United States v. Paccione*, 202 F.3d 622, 625 (6th Cir. 2000), the Sixth Circuit held:

> We hold that a defendant may properly be included as a participant when determining whether the criminal activity "involved five or more participants" for purposes of a leadership role enhancement under § 3B1.1. First, the plain text of the Guideline supports this conclusion. The Guideline uses language-"five or more participants"-that does not in any way distinguish the defendant subject to the enhancement from the other individuals involved in the criminal scheme.

The only other factual analysis required is with regards to Stephanie Smith. Stephanie Smith accompanied the Defendant and Elijah Messer to the victim's residence approximately 72 hours before the robbery. Ms. Smith was also overheard discussing/planning the robbery. *See* testimony of Steven Heinsley and Lawerance Davis. She attempted to recruit Nathan Wagoner. *See* testimony of Nathan Wagoner. There is no question that Stephanie Smith was an active co-conspirator. However, ultimately the Defendant left Stephanie Smith behind hours before the robbery. Per the trial testimony, Stephanie Smith still actively sought her cut of the robbery, until the time she learned that the victim was murdered. *See* the testimony of Nathan Wagoner. The government's position is that Stephanie Smith is appropriately counted as a "participant" even though the Defendant did not bring her to the victim's residence. The question under the USSGs is whether Stephanie Smith was "a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 3B1.1, Application Note 1. On July 25, 2014, Stephanie Smith was indicted for Murder (507.020) and Comp. Robbery, 1st Degree (515.080(2)) along with Elijah Messer and Angela Mills. *See* Knox Circuit Court #14-CR-84-003. Therefore, the government makes

no distinction between the co-conspirators and argues that Stephanie Smith is appropriately counted as a participant.

**II.    The Defendant Held Himself Out as a Law Enforcement Officer to the Victims of His Offense and Doing So Significantly Facilitated the Offense Pursuant to USSG § 3B1.3.**

USSG § 3B1.3 states in relevant part, "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." This enhancement encompasses defendants who pretend to occupy a position of public or private trust, even though they actually do not. USSG § 3B1.3, Application Note 3 states:

> This adjustment also applies in a case in which the defendant provides sufficient indicia to the victim that the defendant legitimately holds a position of private or public trust when, in fact, the defendant does not. For example, the adjustment applies in the case of a defendant who (A) perpetrates a financial fraud by leading an investor to believe the defendant is a legitimate investment broker; or (B) perpetrates a fraud by representing falsely to a patient or employer that the defendant is a licensed physician. In making the misrepresentation, the defendant assumes a position of trust, relative to the victim, that provides the defendant with the same opportunity to commit a difficult-to-detect crime that the defendant would have had if the position were held legitimately.

Finally, the "background" section under USSG § 3B1.3, states, "[t]he adjustment also applies to persons who provide sufficient indicia to the victim that they legitimately hold a position of public or private trust when, in fact, they do not. Such persons generally are viewed as *more culpable*." (emphasis added).

Here, the Defendant impersonated a law enforcement officer while entering the victims' residence in the early morning hours. The Defendant donned a disguise, including handcuffs. The Defendant held himself out as a law enforcement officer

5

repeatedly in an attempt to gain his victims' compliance. He instructed his co-conspirator Christopher Wagner to do the same. In the beginning of the robbery, Charlene Mills testified that she and her husband complied. As the robbery continued Charlene Mills began to suspect that the Defendant and Christopher Wagner were not law enforcement officers as they claimed. Nonetheless, the law enforcement ruse provided the Defendant with initial victim compliance and allowed him to separate the husband and wife/children into different ends of the home. This allowed the Defendant and Christopher Wagner to control the victims, significantly facilitating the offense.

In *United States v. Kirschner*, 995 F.3d 327 (3rd Cir. 2021), the Third Circuit held that abuse of a position of trust applied when sentencing a defendant for impersonating an officer acting under authority of the United States. Kirschner falsely claimed to be a federal agent so that his victims would feel more at ease. *Id.* at 340. "Several other victims similarly alleged that Kirschner's apparent position as a federal law enforcement agent aided his fraud…[o]ne said he 'personally felt more secure making the $11,000 purchase from Kirschner because Kirschner represented himself to be an ATF Special Agent.'" *Id.* As noted by the Third Circuit in *Kirschner*, not every fraud committed by those masquerading as law enforcement will justify an enhancement, the defendant's apparent position must significantly facilitate the commission of the crime. *Id.* at 340-41.

In *United States v. Bailey*, 227 F.3d 792 (7th Cir. 2000), the Seventh Circuit held that a police cadet provided sufficient indicia of authority to his victims to qualify for the enhancement. Bailey was a police cadet and not a sworn officer. *Id.* at 801. "As a cadet, Bailey was supervised closely and had little actual authority…[h]owever, title and lack of

6

authority are not dispositive if the defendant provides 'sufficient indicia of authority' to convince the victim that he possesses authority." *Id.* (*citing* U.S.S.G. § 3B1.3 application note 2). The Seventh Circuit continued their analysis by holding:

> Police officers occupy positions of public trust, and individuals who have apparent authority of police officers when facilitating the commission of an offense abuse the trust that victims place in law enforcement. To the general public, police cadets are not distinguishable from police officers. In performing the shakedown, Bailey arrived in a police cruiser with another police officer, wore an official police uniform, acted as if he were a police officer and never informed Del Toro, the purported victim, that he was not a police officer. From Del Toro's perspective, there was no reason to suspect that Bailey did not occupy the position of trust that he appeared to occupy.
>
> Bailey argues that Del Toro knew ahead of time that Bailey was only a cadet, and therefore, from the perspective of the victim, the government cannot show that Bailey occupied a position of public trust. However, application note 2 to § 3B1.3 clarifies that the guideline requires only that a defendant provide sufficient indicia to the victim demonstrating that the defendant occupies a position of public trust, not that the victim must believe or accept these indicia. See U.S.S.G. § 3B1.3 application note 2. Bailey portrayed himself as a police officer in an attempt to force Del Toro to pay him off, and by so doing, Bailey took advantage of this apparent authority to engage in criminal activity. On this basis, we find no error in the district court's conclusion that Bailey's behavior constituted "a classic instance of abuse of trust."

*Id.* at 802.

In *United States v. Williams*, 25 Fed.Appx. 175 (4th Cir. 2002), the defendant was convicted of impersonating a federal officer, specifically a U.S. Marshal, in violation of 18 U.S.C. § 912. Williams claimed to possess a federally seized Lexus vehicle and the victim paid $700 for delivery of the vehicle. *Id.* at 177. Williams claimed on appeal that USSG § 3B1.3 did not apply because he was not actually an U.S. Marshal. However, the Fourth Circuit held that the relevant question is whether Williams gave his victim

7

"sufficient indicia" that he was a Marshal. *Id.* at 179. "The district court found as a fact that Williams exhibited a badge to Ewing in connection with his representation that he was a United States Marshal, which, coupled with his oral representations, constituted sufficient indicia that Williams was such an official…[m]orever, it is well-settled that law enforcement officers occupy positions of public trust." *Id.* (*citing United States v. Williamson*, 53 F.3d 1500, 1525 (10th Cir.1995); *United States v. Rehal*, 940 F.2d 1, 5 (1st Cir.1991)). On the second point of analysis, the Fourth Circuit found that Williams held out that his position as a Marshal allowed him obtained the vehicle. Williams therefore exploited the victim's trust in public officials. *Id.*1

Similar to *Williams*, the Defendant gave his victims a "sufficient indicia" that he was a Marshal when announced "U.S. Marshals" upon breaching the door, repeatedly claimed to be law enforcement throughout the home invasion, wore a dark vest, displayed handcuffs, and held his flashlight in the victims' faces. *See* testimony of Charlene Mills, Christopher Wagner, and minor victims. This "sufficient indicia" was used to "significantly facilitate" the offense by gaining victim compliance.  Government counsel concedes it was unable to find a Sixth Circuit case that involved USSG § 3B1.3 and impersonating law enforcement.

---

1 *U.S. v. Williams* was vacated on other grounds, specifically the district court double counted and incorrectly calculated the defendant's guideline range. *Id.* at 180-81.

8

### III. The Defendant Engaged in Multiple Instances of Obstruction of Justice Pursuant to USSG § 3C1.1.

USSG § 3C1.1 states, "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." Examples of such conduct include:

> (B) committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction; and 2
>
> (D) destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so; however, if such conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender.

USSG § 3C1.1, Application Note 4.

First and foremost, the Defendant repeatedly perjured himself when he asserted an innocent man murdered the victim. The Defendant testified that Adam Messer took the

---

2 **Limitations on Applicability of Adjustment.**—This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice. USSG § 3C1.1, Application Note 2.

9

Defendant's truck, the Defendant's friend (Christopher Wagner), the Defendant's firearm, and the Defendant's toy handcuffs to commit the home invasion. The Defendant laid an intricate alternative preparator theory which accused an innocent man of murder, slurs against a child, and obstruction. The Defendant wove together numerous falsehoods too extensive to be listed. While the Defendant has an absolute right to testify, he does not have the right to lie under oath.

A court may impose USSG § 3C1.1 if it identifies material, perjured testimony. *See United States v. Roberts*, 919 F.3d 980, 990–91 (6th Cir. 2019). Not every accused who testifies at trial and is convicted will rate an enhancement for obstruction. *United States v. Dunnigan*, 507 U.S. 87, 95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). In *United States v. Castro*, 960 F.3d 857 (6th Cir. 2020), the Sixth Circuit stated:

> When a defendant objects to the application of an obstruction enhancement based on his trial testimony, the sentencing court "must identify those particular portions of the defendant's testimony that it considers to be perjurious," and "must either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Roberts*, 919 F.3d 980, 990 (6th Cir. 2019) (*quoting United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997)) (internal quotations omitted). Those factual predicates are that (1) the defendant gave false testimony (2) concerning a material matter and (3) with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. *Dunnigan*, 507 U.S. at 94, 113 S.Ct. 1111.

In *United States v. Phelps*, 2021 WL 4315947 (6th Cir. 2021), the Sixth Circuit recently applied an obstruction enhancement where the defendant perjured himself at trial. In *Phelps* the district court found "that Phelps lied on the stand when, for example, he denied telling victims that he was the heir to the Morton Salt dynasty and that his

10

family trust had hundreds of millions of dollars to back up their investments." *Id.* at 1. The district court found ample evidence in the record that Phelps lied and the Sixth Circuit found "no fair minded reason to diverge from the district court's and jury's legitimate rejection of Phelps's story." *Id.* Phelps also attempted to assert such an enhancement would have a "chilling effect" on future defendants. *Id.* The Sixth Circuit addressed this argument by holding:

> Phelps also worries that applying this enhancement will chill future defendants' willingness to testify. But the same could be said of our prior cases applying the enhancement. *United States v. Castro*, 960 F.3d 857, 870–71 (6th Cir. 2020). Plus, the opposite rule—that the enhancement could never be used for criminal defendants who lie on the stand—has problems of its own. In the end, the district court showed that it appreciated both sides of the issue, acknowledged that it did not want "to chill a defendant's right to testify," R.256 at 16, and permissibly thought Phelps earned the enhancement anyway.

*Id.*

Arguably, if Phelps "earned" the enhancement for lying about his family's fortune surely the Defendant has "earned" the enhancement for asserting another man is the guilty party. In the present case, the Defendant gave false testimony concerning Adam Messer taking the Defendant's truck, friend (Christopher Wagner), firearm, and handcuffs to perpetrate the offense. These were material facts: the Defendant's vehicle was identified by the victims, the Defendant's firearm was the forensically confirmed murder weapon, Christopher Wagner testified he went inside the residence, and the Defendant's handcuffs were recovered from the victim's bedroom where the murder occurred. The Defendant provided such testimony willfully and not as a result of confusion, mistake, or faulty memory. Nothing in the Defendant's direct nor cross

11

examination supports such testimony was the product of confusion or mistake. The Defendant was firm concerning these falsehoods and others.

The government also concurs with the U.S. Probation Office regarding the clear destruction of material evidence in this case as an alternative basis for the USSG § 3C1.1 enhancement. The government relies on the facts proven throughout the record with regards to the concealment of the murder weapon. [PSR at 34-35]

## IV.     Conclusion:

The government respectfully requests the Court deny the Defendant's material objections to the PSR [PSR at 36-37] and adopt the U.S. Probation Office's calculations as proper. The government concurs that the Defendant should receive credit for his period of state incarceration. The Government reserves the right to present testimonial and/or documentary evidence at the sentencing hearing.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By: /s/ Jenna E. Reed
Assistant United States Attorney
601 Meyers Baker Road, Suite 200
London, Kentucky 40741
(606) 330-4829
Jenna.Reed@usdoj.gov

## CERTIFICATE OF SERVICE

On January 8, 2022, I electronically filed this document through the ECF system, which sent this document by email to counsel of record.

/s/ Jenna E. Reed
Assistant United States Attorney