UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:21-CR-032-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| PATRICK BAKER, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant's Motion to Dismiss and/or Limit His Sentence to Not Greater than 19 Years Imprisonment, [R. 149], and Defendant's Motion to Disclose Specific *Brady* and *Giglio* Material, [R. 151]. The United States responded, [R. 154; R. 155]. Defendant did not reply. For the reasons set forth below, the Court will deny both Motions.

**I. BACKGROUND**

In November 2017, a Knox Circuit Court jury found Defendant Baker guilty of reckless homicide, robbery in the first degree, impersonating a peace officer, and tampering with physical evidence. [R. 149, p. 1]. Defendant was sentenced to a total of nineteen years imprisonment. *Id.* About two years later, on December 6, 2019, former Kentucky Governor Matthew Bevin pardoned Baker. *Id.* On May 27, 2021, a federal grand jury indicted Defendant for unlawfully causing the death of Donald Mills by use of a firearm during the course of a robbery or kidnapping, in violation of 18 U.S.C. § 924(j). [R. 1]. The indictment arose from the same conduct as the prior state court proceedings. [R. 149, p. 2]. On August 25, 2021, a federal jury

convicted Baker of the unlawful killing of Donald Mills. [R. 120]. Sentencing is set for January 18, 2022. [R. 156].

## II.   ANALYSIS

### a.   Motion to Dismiss and/or Limit Sentence

Defendant filed a Motion to Dismiss and/or Limit his Sentence to Not Greater than 19 Years Imprisonment. [R. 149]. He argues that his federal prosecution violates the Double Jeopardy Clause of the Fifth Amendment and that it is based on prosecutorial vindictiveness in violation of the Due Process Clause for the exercise of his right to seek a gubernatorial pardon. [R. 149, p. 2]. He further argues that any sentence in excess of the nineteen years he received in his state court proceedings would be vindictive. *Id.* The United States responded, arguing that double jeopardy does not apply to dual sovereigns and prosecution by separate sovereigns negates any presumption of vindictiveness. [R. 154, pp. 1–8]. Defendant did not reply.

#### i.   Double Jeopardy

Defendant cites not a single case in support of his double jeopardy argument. [R. 149]. Other than reciting his state-court conviction and pardon, his entire argument is a solitary, conclusory sentence: "Here the governments [sic] excessive prosecution of Baker violates double jeopardy." *Id.* at 4. Defendant's double jeopardy argument is meritless. The Court previously rejected Defendant's argument near the end of his jury trial, [R. 115], and will do so again now.

The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . .." U.S. Const. amend. V. The Supreme Court in *Gamble v. United States* observed, "[w]e have long held that a crime under one sovereign's laws is not 'the same offence' as a crime under the laws of another sovereign." 139 S. Ct. 1960, 1964 (2019). Therefore, under the dual-sovereignty doctrine, "a

State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute" or vice versa. *Id.*; *see also United States v. Willis*, 981 F.3d 511, 515 (6th Cir. 2020). Accordingly, the *Gamble* Court denied defendant's double jeopardy challenge where, after pleading guilty to a state felon-in-possession charge, federal prosecutors indicted him for the same instance of possession under federal law. 139 S. Ct. at 1964.

Similarly, in *Willis*, the defendant was charged in state court with murder, possession of a handgun by a convicted felon, and possession of a controlled substance. 981 F.3d at 513. The state court severed the gun charge, and he proceeded to trial on the other charges. *Id.* At trial, a directed verdict was granted in defendant's favor on the drug-possession charge. *Id.* The jury acquitted Willis on the murder charge but found him guilty of reckless homicide. *Id.* A few months later, a federal grand jury indicted Willis for unlawfully possessing a firearm as a convicted felon. *Id.* Shortly thereafter, the state court dismissed its gun-possession charge. *Id.* Willis filed a motion to dismiss for prosecutorial vindictiveness, which the district court denied. *Id.; see infra* Section II(a)(ii). He then filed a motion to dismiss based on double jeopardy, which the district court denied as well. *Id.* at 513-14. On interlocutory appeal of the district court's double-jeopardy ruling, the Sixth affirmed the district court's ruling that neither double jeopardy nor collateral estoppel applies when two sovereigns prosecute a defendant based on the same underlying conduct. *Id.* at 514–16.

The Sixth Circuit held that the Double Jeopardy Clause "does not protect individuals from being twice prosecuted 'for the same conduct or actions,' but instead from being twice prosecuted 'for the same offense.'" *Id.* at 514 (quoting *Gamble*, 139 S. Ct. at 1965). Because the Clause's focus is on the statutory offense charged, the double-jeopardy test focuses on "whether

each [statute] requires proof of a fact which the other does not." *Id.* (internal quotations and citations omitted). Willis's federal indictment was for possession of a firearm by a convicted felon and his state conviction was for reckless homicide (using the same gun). *Id.* The Sixth Circuit reasoned, "[b]ecause these two crimes contain different elements, Willis's double-jeopardy claim is not colorable." *Id.* at 515. The *Willis* Court went on to find that "even if Willis had been convicted of the same crime in state court as charged in his federal indictment, his appeal would still fail." *Id.* Quoting *Gamble,* and relying on the dual-sovereignty doctrine, the Sixth Circuit held:

> a 'State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute.' *Gamble*, 139 S. Ct. at 1964. 'Or the reverse may happen, as it did [in *Gamble*]' and as it did here.

*Id.* (quoting *Gamble*, 139 S. Ct. at 1964); *see also United States v. Patterson*, 853 F.3d 298, 301 (6th Cir. 2017) ("Ohio and the United States derive their power to prosecute from separate sources of sovereignty and thus may prosecute the same individual under their separate legal codes. Such dual prosecutions do not violate the Double Jeopardy Clause.").

Supreme Court and Sixth Circuit precedent foreclose Defendant's double-jeopardy argument. As in *Willis*, Defendant's federal indictment for causing the death of Mr. Mills during and in relation to a drug trafficking offense contains different elements than his state murder charge (or ultimate conviction for reckless homicide). *See id.*; *see also* [R. 1]. But even if Defendant was convicted of the exact same crime in federal court as his state-court conviction, his double jeopardy argument fails. Pursuant to the dual-sovereignty doctrine, Kentucky and the federal government may prosecute him based on the same conduct without offending the Double Jeopardy Clause. *See Gamble*, 139 S. Ct. at 1963–64; *Willis*, 981 F.3d at 515.

- 4 -

Finally, Defendant makes no argument that the facts here involve a "sham prosecution," which occurs when one sovereign merely acts as a tool of another sovereign by "somehow ceding its sovereign authority to prosecute and acting only because [the other sovereign] told it to do so." *Willis*, 981 F.3d at 515–16 (quoting *Bartkus v. Illinois*, 359 U.S. 121, 123–24 (1959)). The Court can find no evidence that the sham-prosecution exception applies.

Defendant's double jeopardy argument fails, and the Court will deny his Motion to Dismiss based on this argument.

### ii. Vindictive Prosecution and Sentencing

Next, Defendant argues that his federal indictment constitutes vindictive prosecution in violation of the Due Process Clause in retaliation for his exercising his constitutional right to request and receive a gubernatorial pardon. [R. 149, p. 2]. He further contends that any attempt by this Court, or the prosecutor, to sentence him to a term of imprisonment greater than he received in state court "would be presumptively vindictive." *Id.* at 4. These arguments fare no better than his double-jeopardy argument. Prosecutors have wide discretion in deciding which cases to prosecute so long as they have probable cause to believe the defendant committed the offense. *United States v. Allen*, 954 F.2d 1160, 1166 (6th Cir. 1992) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Though prosecutorial discretion is broad, it "is not unfettered." *Bragan* v. *Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001) (internal quotations and citations omitted). The Due Process Clause "prohibits the prosecution from punishing a defendant for exercising a protected statutory or constitutional right." *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013) (citations omitted). "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher,* 434 U.S. at 363).

In *Blackledge v. Perry*, the Supreme Court clarified that "the Due Process Clause is not offended by all possibilities of increased punishment" after a defendant exercises a protected right, "but only those that pose a realistic likelihood of vindictiveness." 417 U.S. 21, 27 (1974) (internal quotations omitted). "A showing of vindictive prosecution requires (1) an exercise of a protected right;[1] (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; and (4) the intent to punish the defendant for exercise of the protected right." *United States v. Meda*, 812 F.3d 502, 510 (6th Cir. 2015) (citations omitted); *see also United States v. Young*, 847 F.3d 328, 361–62 (6th Cir. 2017).

A defendant can establish prosecutorial vindictiveness in two ways. First, a defendant may demonstrate "'actual vindictiveness' *i.e.*, he may establish through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Bragan,* 249 F.3d at 481; *Young*, 847 F.3d at 361. This showing is "exceedingly difficult to make." *Bragan,* 249 F.3d at 481 (quoting *United States v.* Meyer, 810 F.2d 1242, 1245 (D.C.Cir. 1987)). Second, the defendant may:

> present sufficient evidence to create a 'presumption of vindictiveness' by examining the 'realistic likelihood of vindictiveness' and focusing 'on the prosecutor's 'stake' in deterring the exercise of a protected right and the unreasonableness of his actions.'

*Young*, 847 F.3d at 361–62 (quoting *United States v. Zolicoffer*, 570 F. App'x 540, 543 (6th Cir. 2014)). If a defendant demonstrates a "realistic likelihood of vindictiveness," the burden shifts to the prosecution to rebut this presumption. *LaDeau*, 734 F.3d at 566. Here, Baker points to no direct or objective evidence to show the prosecutor acted vindictively, so the Court will evaluate

---

[1] For purposes of this Motion, the Court will assume the Defendant had a protected "right" to pursue a gubernatorial pardon.

whether he has presented evidence sufficient to raise a "presumption of vindictiveness" by examining the "realistic likelihood of vindictiveness." *Young*, 847 F.3d at 362.

First, Defendant fails to show that the prosecution in this case had a "stake" in the exercise of his pursuit of a gubernatorial pardon in state court. *See Young*, 847 F.3d at 362; *see also United States v. Willis*, No. 3:19-cr-086-DJH (W.D. Ky. Nov. 6, 2019), ECF No. 29. Though Defendant fails to articulate any specifics of his vindictive prosecution argument, presumably his argument is that the federal prosecutor in this case is punishing him for seeking and receiving a gubernatorial pardon on his state-court convictions. *See* [R. 149]. "[T]he likelihood that a defendant's exercise of his rights will spur a vindictive prosecutorial response is indexed to the burden that the defendant's conduct has placed on the prosecution." *LaDeau*, 734 F.3d at 569. "When the prosecution 'is forced to do over what it thought it had already done correctly,'" or where "'duplicative expenditures of prosecutorial resources' are required . . . the prosecution's stake in discouraging the defendant's exercise of a right may be 'considerable.'" *Id.* at 569–70 (internal citations omitted). But that was hardly the case here, where it was the *Commonwealth's* convictions that were subject to the pardon. The federal prosecution was not "forced to do over what it thought it had already done correctly," nor was it forced to incur "duplicative expenditures of prosecutorial resources." *Id.*

In *Willis*, the defendant made an analogous argument that federal prosecutors indicted him on a felon-in-possession charge as punishment for pursuing his right to a jury trial on a state gun charge. *Willis*, 3:19-cr-086-DJH, ECF No. 29 at 1–2; *see also Willis*, 981 F.3d at 513. The court rejected the argument reasoning that Willis failed to demonstrate the federal prosecutor had a "stake" in the exercise of his rights in state court and failed to show "that the [federal prosecutor] was motivated to prosecute him because Willis may have inconvenienced the

Commonwealth's Attorney." *Willis*, 3:19-cr-086-DJH, ECF No. 29 at 3–4 (citing *United States v. Spears*, 159 F.3d 1081, 1086–87 (7th Cir. 1998) (reasoning that the state prosecutor's animus could not be imputed to the federal prosecutor and that "it is very difficult to sustain a claim of vindictive prosecution where two separate sovereigns are involved")).

The same is true here. Defendant fails to demonstrate how the federal prosecutor, working for a separate sovereign and pursuing different, federal charges, had any personal "stake" in Defendant seeking and obtaining a pardon of his *state-court* convictions. In contrast, the Sixth Circuit in *LaDeau*, 734 F.3d at 569, found an impermissible "stake" and the government's subsequent charges vindictive where the defendant successfully moved to suppress "crucial evidence" with the net effect of "inflict[ing] a mortal blow" to the government's first indictment. But *LaDeau*, and cases like it, are distinguishable from the present case. *LaDeau* involved the same sovereign having to "restart *its prosecution* from square one in order to prevent [the defendant] from 'going free.'" *Id.* at 570 (emphasis added) (quoting *Blackledge*, 417 U.S. at 27). Here, the United States did not have to "re-start its prosecution." The federal government indicted Baker only after his state-court pardon.

Defendant cites a handful of cases involving prosecutorial and judicial vindictiveness, but wholly fails to analyze how those cases square with the facts in this case. [R. 149, pp. 2–4]. After briefly summarizing each case, the Defendant simply states, "any attempt by this Court, or the prosecutor to sentence Baker to a term of imprisonment greater than he received during his first trial [in state court] would be presumptively vindictive, and unconstitutionally violate Baker's right to due process of law." *Id.* at 4. The cases cited by Defendant, however, all involved circumstances where the *same sovereign* (and usually the same prosecutor or judge) "upped the ante" with additional or more serious charges (or a lengthier sentence) after the defendant's

exercise of a protected constitutional right. [R. 149, pp. 2–4]; *see also Thigpen v. Roberts,* 468 U.S. 27, 33 (1984) (holding that the state's successive "prosecution of Roberts for manslaughter, following his invocation of his statutory right to appeal his misdemeanor convictions, was unconstitutional"); *Blackledge,* 417 U.S. at 27–29 (finding vindictiveness where the state prosecutors "upped the ante," charging Perry with a felony, after he exercised his statutory right to a trial *de novo* on his misdemeanor conviction).

In contrast, this is not a case where the same prosecutor (or even the same sovereign) "ups the ante" against a defendant by filing additional or more serious charges after the defendant has taken some step in the defense of his case. *See LaDeau,* 734 F.3d at 569. Here, Defendant was indicted by a *separate* sovereign, a *different* prosecutor, and for a *different* crime than he was convicted of and then pardoned in state court. Defendant has made no showing that the federal prosecutor somehow had a personal "stake" in his exercise of any right at the state-court level. *See United States v. Willis*, No. 3:19-cr-086-DJH (W.D. Ky. Nov. 6, 2019), ECF No. 29; *see also United States v. Ribota*, 792 F.3d 837, 840 (7th Cir. 2015) (explaining that "a defendant alleging prosecutorial animus 'must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication.'").

As the United States argues, courts have been reluctant to find "vindictiveness" where, as here, the defendant was prosecuted by two separate sovereigns. [R. 154, pp. 4–8]; *see also United States v. Robison*, 644 F.2d 1270, 1273 (9th Cir. 1981) ("[A]lthough [Defendant] emphasizes that the federal prosecution followed immediately upon the heels of his successful state appeal . . . the fact that the second prosecution was brought by a different sovereign further weakens defendant's position."); *Spears*, 159 F.3d at 1086–87 ("[I]t is very difficult to sustain a

claim of vindictive prosecution where two separate sovereigns are involved. . . The fact that a federal prosecution occurred after an unfavorable result in a state court does not, in and of itself, demonstrate vindictiveness on the part of the federal prosecutor."); *United States v. Johnson*, 91 F.3d 695, 698–99 (5th Cir. 1996), *cert. denied*, 519 U.S. 1083 (1997) (no vindictiveness on the part of the federal prosecutor for bringing charges for firearms violation after acquittal of state capital murder charges); *United States v. Gray*, 382 F. Supp. 2d 898, 905–07 (E.D. Mich. 2005) (collecting cases).

In *United States v. DeMichael*, the defendant claimed his federal prosecution in Wisconsin was vindictive where it followed the dismissal of two state cases and a federal plea in another jurisdiction. *United States v. DeMichael*, 692 F.2d 1059, 1061 (7th Cir. 1982). But successive prosecution alone "is not enough" to demonstrate vindictiveness, especially where it involves dual sovereigns. *Id.* The Seventh Circuit reasoned,

> [U]nder our federal system there can be simultaneous federal and State prosecutions where similar or identical offenses under the two systems of law are committed as the result of particular conduct on the part of a defendant. Moreover, there is nothing more than exercise of normal prosecutorial discretion involved if the prosecuting attorney is satisfied to drop one prosecution if an adequate result is obtained in the other, *or decides to proceed in the second case if an inadequate result is obtained in the first*.

*Id.* at 1062 (emphasis added).

Similarly, in *United States v. Gilley*, 689 F. Supp. 1078 (N.D. Fla. 1988), *aff'd*, 874 F.2d 819 (11th Cir. 1989), the defendant claimed vindictive prosecution when he was indicted federally after the state prosecutor entered a *nolle prosequi* when Gilley filed a motion to suppress in his state court case. *Id.* at 1079. His punishment in state court would have been nineteen months of a three-year sentence, and he faced a mandatory minimum of ten years in federal court. *Id.* The *Gilley* court noted the "close and open cooperation" between the state and federal authorities but reasoned that "due to the absolute autonomy of the two sovereigns, there

could not have arisen on these facts a realistic likelihood of vindictiveness." *Id.* at 1081. The court further reasoned, "the fact that a decision was made to prosecute [defendant] in federal court where the penalties are greater does not mean that the government, the second of two prosecutors, has vindictively 'increased the charges' against him." *Id.* This Court can find no improper, personal "stake" in this proceeding, where Defendant was indicted and convicted by a separate sovereign (the United States), for a separate federal crime (18 U.S.C. § 924(j)), after his conviction and subsequent pardon in state court.

Defendant's prosecutorial vindictiveness argument similarly falters on the reasonableness prong. *See Young*, 847 F.3d at 362. As an initial matter, it is well established that state and federal authorities can prosecute a defendant for the same conduct without offending the Double Jeopardy Clause. *See supra* Section II(a)(i); *see also Gamble*, 139 S. Ct. at 1964; *Willis*, 981 F.3d at 515. In *United States v Odom*, 42 F.3d 1389 (Table), 1994 WL 669675 (6th Cir. 1994), the Sixth Circuit held that even a successful state prosecution does not foreclose a later federal prosecution involving the same underlying conduct, absent evidence of a "sham" prosecution, reasoning,

> even if state authorities did 'trigger' a federal investigation of Odom's activities, this action did not amount to a violation of Odom's due process rights. The subsequent federal investigation revealed that Odom had violated federal law, and the federal authorities chose to pursue a federal prosecution.

*Id.* at *2. As the *DeMichael* court explained, federal prosecutors similarly have the ability to delay prosecution on a federal charge pending the results of a state proceeding. *See DeMichael*, 692 F.2d at 1273.

In *United States v. Prado*, No. 3:16-CR-099-CRS, 2018 WL 652828 (W.D. Ky. Jan. 31, 2018), the defendant made a similar prosecutorial vindictiveness claim. *Id.* at *3. In his federal case, defendant challenged the government's attempt to introduce his prior state-court

- 11 -

convictions under Federal Rule of Evidence 404(b). *Id.* at *1. In response, the federal prosecutor filed a superseding indictment adding five counts of identity theft based on the same acts underlying the defendant's state-court convictions. *Id.* The court found the prosecutor's conduct reasonable, in part because the "prior state court prosecutions left [the federal interest of punishing credit card fraud and identity theft] substantially unvindicated" where the defendant's five-year state conviction was diverted and he was placed on supervision. *Id.* at *3–4. Undoubtedly, the federal government has a significant interest in prosecuting gun crimes, especially gun crimes that result in the loss of life, as in this case. As in *Odom*, after Baker's state prosecution, a "subsequent federal investigation revealed that [Baker] had violated federal law [specifically 18 U.S.C. § 924(j)], and the federal authorities chose to pursue a federal prosecution." *Odom*, 1994 WL 669675, at *2. The federal prosecutor could have reasonably concluded that the pardon of Baker's state convictions left the federal interest "substantially unvindicated." *See id.; see also Prado*, 2018 WL 652828, at *3–4. Stated another way, this is nothing more than the exercise of "normal prosecutorial discretion" where the federal government pursued its case after an "inadequate result" was obtained in the first. *See DeMichael*, 692 F.2d at 1062.

Relatedly, Defendant cites *North Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989), to argue that any attempt by the prosecutor or this Court to sentence him to a term of imprisonment greater than he received in state court would be presumptively vindictive. [R. 149, pp. 2, 4]. But *Pearce* is distinguishable because it involved the same sentencing court who sentenced Pearce more severely on retrial, after Pearce secured a reversal of his original conviction. *Pearce*, 395 U.S. at 712. Moreover, Supreme Court precedent has cabined the *Pearce* opinion, finding that "its presumption of

vindictiveness 'do[es] not apply in every case where a convicted defendant receives a higher

sentence on retrial.'" *Smith,* 490 U.S. at 799 (quoting *Texas v. McCullough*, 475 U.S. 134, 138

(1986)). The Supreme Court in *Alabama v. Smith* reasoned:

> Because the *Pearce* presumption "may operate in the absence of any proof of an
> improper motive and thus . . . block a legitimate response to criminal conduct" . . .
> we have limited its application . . . to circumstances "where its 'objectives are
> thought most efficaciously served,'" [such as] those in which there is a
> "reasonable likelihood" that the increase in sentence is the product of actual
> vindictiveness on the part of the sentencing authority. Where there is no such
> reasonable likelihood, the burden remains upon the defendant to prove actual
> vindictiveness.

*Id.* (internal citations omitted); *see also Colten v. Kentucky*, 407 U.S. 104 (1972); *Chaffin v.*

*Stynchombe*, 412 U.S. 17 (1973).

More analogous to this case, in *Colten v. Kentucky,* the Supreme Court refused to apply a

vindictiveness presumption when the increased sentence was imposed by a second court in a

two-tiered system, which gave a defendant convicted of a misdemeanor in a lower court the right

to trial *de novo* in a superior court. 407 U.S. at 117. The Supreme Court observed that the trial *de*

*novo* represented a "completely fresh determination of guilt or innocence" by a court that was

not being "asked to do over what it thought it had already done correctly." *Id.* at 117–19. The

Court further reasoned that if the trial in superior court resulted in a greater penalty, "it no more

follows that such a sentence is a vindictive penalty for seeking a superior court trial than that the

inferior court imposed a lenient penalty." *Id.* at 117.

This case presents even less risk of prosecutorial or judicial vindictiveness than in *Colten*.

This Court is not being "asked to do over what it thought it had already done correctly." *See id.*

Rather, this Court is tasked with sentencing Defendant after a "completely fresh determination of

his guilt" by a federal jury. This Court did not impose Baker's state-court sentence and is not

bound by it. Defendant has proffered no evidence of actual vindictiveness and the law, especially under the facts of this case, does not presume as much. *See id.; see also Alabama v. Smith,* 490 U.S. at 801 (following the reasoning of *Colten* and holding, "[w]e think the same reasoning leads to the conclusion that when a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge.").

Defendant has made no showing of prosecutorial or judicial vindictiveness and the case law is clear that no such "presumption" is automatically applied under the procedural and factual circumstances of this case. The cases cited by Defendant are simply inapplicable. This Court will not "resentence" Defendant for his state-court convictions. Rather, Defendant stands before this Court convicted by a federal jury of the unlawful killing of Donald Mills while using a firearm and during the commission of a robbery. The federal jury convicted Baker of a separate crime, charged by a separate sovereign.

Implicit in Defendant's argument for this Court to re-impose the 19-year sentence he received in state court is a request for this Court to ignore federal sentencing law and procedure and to disregard Baker's Presentence Report, his properly-calculated Guidelines range (which is non-binding, but a relevant factor), the statutory sentencing factors required by Congress, and relevant Supreme Court and Sixth Circuit precedent. *See* 18 U.S.C. §§ 3552, 3553(a); Fed. R. Crim. P. 32; *Gall v. United States*, 552 U.S. 38, 49–50 (2007). Baker's federal conviction is subject to a different statutory punishment and sentencing regime than his state court convictions, and this Court is not bound (up or down) by his state sentence. Indeed, the Sixth Circuit has held that it would be impermissible for this Court to consider his state sentence in determining his federal one. *See United States v. Boucher*, 937 F.3d 702 (6th Cir. 2019) ("[I]t is

- 14 -

impermissible for a district court to consider the defendant's likely state court sentence as a factor in determining his federal sentence.") (quoting *United States v. Malone*, 503 F.3d 481, 486 (6th Cir. 2007)). As the *Boucher* court reasoned, "[b]ecause state courts may sentence defendants according to their own criteria without reference to the Guidelines, permitting federal courts to rely on state-court criteria would 'enhance, rather than diminish disparities' among similarly situated federal defendants." *Id.* This Court will evaluate and impose Defendant's federal sentence, as in any case, through the prism outlined by Congress in 18 U.S.C. § 3553(a), the correctly-calculated United States Sentencing Guidelines, the information contained in his Presentence Report, Supreme Court and other relevant precedent, and the facts and circumstances particular to this case.

The Court denies the Motion to Dismiss or Limit Defendant's Sentence to Not Greater than Nineteen Years, [R. 149].

### b. Motion to Disclose

Defendant Baker filed a Motion to Disclose Specific *Brady* and *Giglio* Material on November 29, 2021. [R. 151]. In his Motion, Defendant explains that he believes three testifying witnesses at his trial, Nathan Eugene Wagoner, Christopher B. Wagner, and Elijah Messer, may have formed "undisclosed" agreements with the government to receive sentence reductions in exchange for their testimony. *Id.* at 1–2. Defendant notes that another Judge in the Eastern District of Kentucky approved an amended judgment significantly reducing Nathan Wagoner's sentence shortly after Baker's trial. *Id.* at 2; *see United States v. Wagoner*, 6:18-cr-058-REW (E.D. Ky. Nov. 1, 2021), ECF No. 91. To aid his future appeals, Baker seeks "all jail recorded telephone calls made by Nathan Eugene Wagoner; Christopher B. Wagner; and Elijah Messer from January 1, 2021 through the present; as well as a list of all visitors who met with Nathan

Eugene Wagoner; Christopher B. Wagner; and Elijah Messer from March 29, 2021 to the present." [R. 151, p.2]. The government responded that no *Brady* violation occurred, and further that it does not possess the desired materials and had no duty to uncover and disclose the information. [R. 155]. Defendant did not reply.

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). The Court later expanded the *Brady* doctrine to include evidence of an agreement between the government and a testifying witness. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972). The *Brady* doctrine applies not only to exculpatory evidence, but also to evidence which a defendant could use at trial to impeach witnesses. *United States v. Bagley*, 473 U.S. 667, 676 (1985). The government must disclose agreements with a testifying witness, whether the agreement is express or "less formal, unwritten or tacit." *Jefferson v. United States,* 730 F.3d 537, 550 (6th Cir. 2013).

In *Bell v. Bell*, the Sixth Circuit analyzed whether a defendant was entitled to habeas corpus relief based on allegations that the prosecution failed to turn over impeachment evidence regarding an agreement with a testifying witness. 512 F.3d 223, 233 (6th Cir. 2008) (en banc). The defendant argued that the government failed to turn over (1) notes taken by a prosecutor during a meeting with a testifying witness, (2) sentencing records from the testifying witness's case, and (3) details about an agreement that the defendant believed prosecutors made with the testifying witness. *Id.* at 232. The *Bell* court found that the government should have disclosed the two specific documents pursuant to *Brady*. *Id.* However, the court held that the defendant's assertion that the prosecution had an agreement with a testifying witness did not raise a *Brady*

- 16 -

issue. *Id.* at 233. The court noted, "[i]t is well established that an express agreement between the prosecution and a witness is possible impeachment material that must be turned over under *Brady*." *Id.* However, "[t]he existence of a less formal, unwritten or tacit agreement is also subject to *Brady*'s disclosure mandate." *Id. (*citing *Wisehart v. Davis,* 408 F.3d 321, 323–24 (7th Cir. 2005)). Even so, "[a] witness's expectation of a future benefit is not determinative of the question of whether a tacit agreement subject to disclosure existed." *Id*. (citing *Wisehart,* 408 F.3d at 325) ("[W]hat one party might expect from another does not amount to an agreement between them."). Rather, "there must be some assurance or promise from the prosecution that gives rise to a *mutual* understanding or tacit *agreement." Akrawi v. Booker,* 572 F.3d 252, 263 (6th Cir. 2009) (emphasis in original) (citing *Bell*, 512 F.3d at 233).

The *Bell* court ultimately found that the defendant failed to demonstrate the existence of an understanding between the cooperating witness and the prosecution. *Bell,* 512 F.3d at 234. The defendant in *Bell* pointed to, among other things, a post-trial letter the prosecutor transmitted to the witness's parole board, mentioning the witness's cooperation in the case against Bell. *Id.* Referencing the prosecutor's sworn statement to the lower court that no agreement existed between the government and the cooperating witness, the Sixth Circuit found, "we have no reason to believe that an undisclosed agreement was the true reason for [the prosecutor's] letter to the parole board." *Id.* The *Bell* court concluded:

> In sum, although we do not take issue with the principle that the prosecution must disclose a tacit agreement between the prosecution and a witness, it is not the case that, if the government chooses to provide assistance to a witness following a trial, a court must necessarily infer a preexisting deal subject to disclosure under *Brady*. 'The government is free to reward witnesses for their cooperation with favorable treatment in pending criminal cases without disclosing to the defendant its intention to do so, *provided* that it does not promise anything to the witnesses prior to their testimony.'

*Id.* (quoting *Shabazz v. Artuz*, 336 F.3d 154, 165 (2d Cir. 2003)) (emphasis in original). "To conclude otherwise would place prosecutors in the untenable position of being obligated to disclose information prior to trial that may not be available to them or to forgo the award of favorable treatment to a participating witness for fear that they will be accused of withholding evidence of an agreement." *Id.*

Turning first to Nathan Wagoner, while the timing of his recent sentence reduction understandably prompted Defendant's Motion, this Court is satisfied that no *Brady/Giglio* violation occurred related to Wagoner, nor has Baker made any argument justifying an order from this Court to compel production of the phone calls and records requested. Assuming the government recommended a sentence reduction for Wagoner because of his testimony against Defendant, the government did not have to disclose its intentions to Defendant *absent an agreement with Nathan Wagoner prior to the testimony. See Bell*, 512 F.3d at 234. During the charge conference in this case, the Court asked the prosecutor point blank whether the United States had offered a "deal" to any of the three witnesses—Nathan Wagoner, Christopher Wagner or Elijah Messer. [R. 153, p. 80]. The United States advised, "the federal government did not have a deal with any of them." *Id.* At trial, Nathan Wagner credibly confirmed on re-direct the absence of any government agreement:

> Q:  With regards to your testimony here today, have you been promised anything from the government?
> A:  Absolutely not.
> Q:  Do you have any sort of written agreement or plea between you and the government for a reduced sentence?
> A:  No, nothing at all.
> Q: Okay. Also, with regards to why you're here, did you reach out to the government and say, "Hey, I want to come and testify against Patrick Baker"?
> A: No, I did not.
>
> . . .

> Q:  Do you want to be testifying against your friend?
> A:  No, I do not.
> Q:  Do you want to hurt Patrick Baker?
> A:  Not in any way whatsoever.
> Q:  Are you willing to lie for Patrick Baker?
> A:  No, I am not.

[R. 140, pp. 245-46]. Nathan Wagoner confirmed the same on cross examination, but expressed his "hope" of getting some type of reduction:

> Q:  You said you didn't have a promise, but certainly you've got a hope of a reduced sentence, correct, Mr. Wagoner?
> A:  What is that now?
> Q:  You've got a hope of a reduced sentence, correct?
> A:  I think that anyone that's incarcerated would hope for something like that.

*Id.* at 248. Other than the timing of a recent sentence reduction, Defendant provides no argument or evidence to suggest that the government promised anything to Wagoner prior to his testimony, or had a written, unwritten, or tacit agreement to that effect which would have triggered a *Brady*/*Giglio* disclosure. *See* [R. 151]. Even assuming Wagoner "may have been seeking more lenient treatment in his own case, [this Court can] find no evidence of a corresponding assurance or promise from [the prosecutor]." *See Bell*, 512 F.3d at 233; *see also Williams v. Coyle*, 260 F.3d 684, 707–08 (6th Cir. 2001) (In a case where two testifying witnesses received lighter sentences post-trial and one of the witnesses stated at trial that he hoped to receive some benefit from his testimony, the Sixth Circuit found no *Brady* violation, reasoning that "the mere fact that [the witnesses'] sentences were later altered is not evidence that a deal existed prior to their testimony at trial."); *Matthews v. Ishee*, 486 F.3d 883, 896 (6th Cir. 2007) (rejecting the defendant's argument that a testifying witness's subsequent favorable plea agreement demonstrated the existence of an undisclosed pre-trial agreement between the government and the witness, and explaining that "[t]he fact that [the testifying witness] entered into a favorable

plea bargain within two weeks after [defendant's] conviction and sentence is not evidence, or is at most weak circumstantial evidence, that a deal existed at the time of trial.").

Consequently, as in *Bell*, "[w]ithout an agreement, no evidence was suppressed, and the state's conduct, not disclosing something it did not have, cannot be considered a *Brady* violation." *See id.* at 234 (quoting *Todd v. Schomig,* 283 F.3d 842, 849 (7th Cir. 2002)); *see also United States v. Thomas*, 849 F.3d 669, 680 (6th Cir. 2017) (citing *Bell*, 512 F.3d at 234 and holding that "the fact that a witness was later compensated for her testimony [does not] rise to a sufficient presumption for a *Brady* claim."). In any event, based simply on Nathan Wagoner's "hope" of a deal with the government, the Court nevertheless instructed the jury to view his testimony with more caution, explaining that Wagoner "hopes to receive a reduction in his sentence based on his testimony." [R. 121, p. 30].[2]

As to Elijah Messer and Christopher Wagner, the Defendant makes *no showing whatsoever* that an undisclosed deal with the government existed triggering *Brady/Giglio* disclosures, other than reciting the mere fact that these witnesses testified against Baker. [R. 151; R. 153, p. 80]. There is not even an allegation, as with Nathan Wagoner, that either witness has received any sort of benefit or a sentence reduction post-trial. The law is clear that "there must be some assurance or promise from the prosecution that gives rise to a *mutual* understanding or tacit agreement." *Akrawi,* 572 F.3d at 263 (emphasis in original) (citing *Bell*, 512 F.3d at 233). Based on this record, Defendant has made no showing by way of evidence or argument to support the existence of a pre–testimony agreement (formal or tacit) with Christopher Wagner or Elijah Messer.

---

[2] Defendant did not request a hearing on either of his Motions, [R. 149; R. 151], and, given the well-developed record on the relevant issues, the Court finds a hearing is unnecessary.

During the extended charge conference, the Court once again asked the prosecutor, "is there a possibility that [Elijah Messer] might receive a sentence reduction?" [R. 158, p. 11]. The United States speculated, "I think that is a possibility but, obviously, not from the federal side of things, but from the state." *Id.* As explained above, this Court cannot base a *Brady* violation (and the production of voluminous records which do not even appear to be in the possession of the prosecution) on the "possibility" that Elijah Messer might someday receive a reduction of his state-court sentence by another prosecutor, especially in the complete absence of any other corroborating evidence. Further, there is nothing in the record to suggest any coordination between the United States and state prosecutors regarding any potential agreement such that the federal prosecution is being used as a "tool" of the state or vice versa. *See Willis*, 981 F.3d at 515–16 (quoting *Bartkus*, 359 U.S. at 123–24) (discussing the "startling showing" required to establish that the federal government is "ceding its sovereign authority" and acting on behalf of Kentucky authorities).

Although Defendant's Motion states, without citation to the record, that at trial Christopher Wagner and Elijah Messer, like Nathan Wagoner, "denied having any deal for leniency and/or modification of his sentence," the Court finds no support for this statement in the trial record. [R. 151, p. 1]. After scouring the record on this point, the Court can find no such trial testimony either elicited by the government, or on cross-examination by defense counsel regarding a potential government deal. Moreover, to the extent that a sentence reduction in state court might theoretically develop someday, that speculative possibility was not lost on experienced defense counsel or somehow withheld by the United States. Indeed, at Baker's detention hearing on June 4, 2021, two months in advance of trial, defense counsel cross-

examined Agent Todd Tremaine about the possibility that Chris Wagner might ultimately receive

a lesser sentence.

> Q: Is Mr. Wagner seeking to get out?
> A: No, we told him there's nothing we. . . His parole eligibility date is in about a year, year and a half. We told him there's nothing we're gonna do for him. And it's his option to continue on and tell the truth, and he's agreed to do so.
> Q: That's good of him. So, let me ask you this, did he seek to get out? Not what you told him– did he seek, was he seeking something to try to get out?
> A: He met with his attorney and then came back and asked us "is there anything that this . . . could this benefit me?"
> Q: So, he met with his attorney, and then through his attorney, he asked if what would benefit him?
> A: If continuing to cooperate would benefit him. . . He wanted to know what was in it for him.

Audio Tape: Detention Hearing as to Patrick Baker, at 2:58:43–2:59:37 (June 4, 2021) (on file

with the Court); *see also* [R. 15]. Agent Tremaine made clear that, although Wagner's counsel

inquired about a benefit, he was told he would receive nothing in exchange for his testimony. *Id.*

Perhaps that is why defense counsel chose not to cross examine Chris Wagner or Elijah Messer

at trial on any potential deal with federal or state authorities.[3] *See* [R. 141, pp. 22–105, 106–25,

228–259, 262–66]. After a thorough search of the trial testimony, this Court could find no such

challenge to the credibility of either witness based on a potential government agreement. *See id.*

Based on the evidence presented, and defense counsel's lack of cross examination on this point,

unlike the situation with Nathan Wagoner, the Court did not give Instruction 7.06B for

Christopher Wagner or Elijah Messer, [R. 121, p. 30], but gave numerous other cautionary

---

[3] Perhaps this also explains why defense counsel never sought the requested visitor logs or jail phone recordings from the United States pre-trial, nor did they undertake efforts to obtain these records on their own. *See* [R. 155, p. 2]; *see also Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007) ("Where, like here, 'the factual basis' for a claim is 'reasonably available to' the petitioner or his counsel from another source, the government is under no duty to supply that information to the defense."); *United States v. Harriman*, No. 18-CR-2033-CJW-MAR, 2019 WL 3290122, at *3 (N.D. Iowa, July 22, 2019) ("[B]ecause defendant could have obtained recorded phone calls from the Bureau of Prisons himself, he cannot show that the government suppressed evidence.").

instructions to the jury on weighing the credibility of Elijah Messer's and Christopher Wagner's testimony based on the actual evidence presented at trial. [R. 121, pp. 27, 31].[4]

In sum, the Court finds no evidence or credible allegation as to the existence of an undisclosed, pre-trial government agreement with any of the three witnesses that would trigger a *Brady/Giglio* violation or the extraordinary production of the voluminous records and recordings Defendant requests in his Motion. Defendant has made no showing that there was "some assurance or promise from the prosecution that gives rise to a *mutual* understanding or tacit agreement." *See Akrawi,* 572 F.3d at 263 (emphasis in original). This Court has closely examined the record in this case, in addition to thoroughly reviewing the law and the parties' arguments. Based on this record and the law, the Court can find no *Brady/Giglio* violation as to any of the three witnesses, and there are no grounds to order the government or anyone else to produce the requested records.

Further, as a general matter, the Court disagrees with Defendant's argument that "a Government prosecutor cannot fulfill her duties pursuant to *Kyles v. Whitley*, 514 U.S. 419 (1995) to search and obtain *Brady* and *Giglio* material without reviewing recorded statements (telephone calls) from its witnesses." [R. 151, p. 2]. First these records do not even appear to be in the custody of the prosecution. [R. 155, p. 2]; *see also United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375 (9th Cir. 1987) (finding that "the federal government had no duty to obtain from state officials documents of which it was aware" because the federal government did not have

---

[4] To be clear, defense counsel's lack of cross examination on this point would be irrelevant if this Court otherwise found credible evidence that such a pre-trial agreement in fact existed and went undisclosed. But as explained in detail, no such evidence has been presented. The Court's discussion concerning the lack of cross examination on this issue is included to correct the statement in Defendant's Motion that these two witnesses denied at trial the existence of a pre-trial deal, as the Court can find no such testimony. [R. 151, p. 1]. Further, the discussion is included to provide a full record on the trial proceedings on this issue and the Court's ultimate instructions to the jury in this regard.

custody or control over the documents); *United States v. Warren*, 782 F. App'x 466, 471 (6th Cir. 2019) ("[N]either Rule 16 nor *Brady* requires the government to turn over information that it does not possess, have custody of, or control."). Moreover, as a general matter, the United States has no general obligation under *Brady*, *Giglio*, or *Kyles* to obtain and disclose jail calls and visitor logs regarding testifying witnesses absent some cause or justification (which Defendant has failed to demonstrate). *See United States v. Merlino*, 349 F.3d 144, 154–55 (3rd Cir. 2003) (holding that prosecutors had no *Brady* obligation to obtain and turn over Bureau of Prisons (BOP) records pertaining to phone conversations of cooperating government witnesses); *McKinney v. United States*, No. 14-20698, 2019 WL 4990803, at *5 (E.D. Mich. Oct. 8, 2019) ("Mere speculation is not enough to support a finding that failure to disclose information about any such 'jail calls' violated *Brady* in the first instance, and it also is not enough to establish good cause to order disclosure of unidentified recordings that the petitioner merely presumes may exist and could support his claims in the present motion."); *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) (explaining that *Kyles* cannot "be read as imposing a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue."); *Hall v. Mays*, 7 F.4th 433, 445 (6th Cir. 2021) (finding no *Brady* violation based on a state prosecutor's failure to learn of and turn over a key witness's mental health records from the Tennessee Department of Corrections); *United States v. Dominguez*, No. 3:20-CR-28-KAC-HBG, 2021 WL 4899918, at *2 (E.D. Tenn. Oct. 20, 2021) ("The Court agrees with the Government that it has no obligation to seek out and disclose jail communications that it did not review."). The Defendant has provided nothing more than speculation that a *Brady/Giglio* violation occurred and further has provided no grounds or

authority for this Court to order the production of the requested documents. His Motion is denied.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.      Defendant's Motion to Dismiss and/or Limit His Sentence to Not Greater than 19 Years Imprisonment, [R. 149], is **DENIED**.

2.      Defendants' Motion to Disclose Specific *Brady* and *Giglio* Material, [R. 151], is **DENIED**.

This the 14th day of January, 2022.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

- 25 -